UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JESUS EMPERATRIZ CISNEROS,

                                Plaintiff,

        -against-                                       **REPORT & RECOMMENDATION**
                                                        21 CV 6579 (DG) (CLP)
ZOE CONSTRUCTION CORP., CARLOS
ATIENCIA, and ALEXANDRA LITUAMA,

                                Defendants.
--------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On November 24, 2021, plaintiff Jesus Emperatriz Cisneros commenced this action

against defendants Zoe Construction Corporation ("Zoe Construction"), Carlos Atiencia

("Atiencia"), and Alexandra Lituama ("Lituama") (collectively, "defendants"), seeking damages

for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

201, et seq. and the New York Labor Law ("NYLL") §§ 190 and 650, et seq., unpaid "spread of

hours" pursuant to N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6, and violations of the

NYLL's notice and recordkeeping and wage statement provisions. (See Compl.[1]).

        Currently pending before this Court is plaintiff's motion for default judgment against

defendants. For the reasons set forth below, the Court respectfully recommends that plaintiff's

motion be granted in part and denied in part, and that plaintiff be awarded **$22,905.69** in

damages, as well as pre- and post-judgment interest, and **$3,942.50** in attorney's fees and costs.

---

[1] Citations to "Compl." refer to the Complaint, filed on November 24, 2021, ECF No. 1.

1

FACTUAL BACKGROUND

Plaintiff, who resides in Queens County, N.Y., was employed by defendants at Zoe Construction from May 2018 to October 2020, as a painter, compound maker, and general laborer.  (Id. ¶¶ 3, 9, 36, 37; Cisneros Decl.[2] ¶¶ 3, 6).  Defendant Zoe Construction is a domestic corporation organized under New York state law, with its principal place of business at 7237 Cooper Ave, Ridgewood, N.Y. 11385.  (Compl. ¶ 11).  Defendants Alexandra Lituama and Carlos Atiencia are alleged to be the "owner[s], officer[s], and/or agent[s]" of Zoe Construction and possess operational control and ownership interest in Zoe Construction.  (Id. ¶¶ 12-13, 18-19).  At all times relevant to this action, defendants Lituama and Atiencia were both responsible for hiring and firing employees of Zoe Construction and supervising employees on a daily basis.  (Id. ¶¶ 15, 17, 22-23).  Within the same period, defendant Lituama was responsible for determining wages and compensation and for issuing pay to employees.  (Id. ¶¶ 14, 16).  Additionally, during the same period, defendant Atiencia established plaintiff's schedule, had the "final word on all decisions relating to the business operations of Zoe Construction," directed plaintiff in his[3] daily tasks, controlled/supervised the payroll practices at Zoe Construction, and issued payments to plaintiff "on a regular basis."  (Id. ¶¶ 20-21, 24-26).

According to the Complaint, plaintiff regularly worked in excess of 40 hours per week.  (Id. ¶ 40).  Specifically, between May 2018 and December 2019, for five (5) to seven (7) days per week, plaintiff worked from between 7:15 and 7:45 a.m. to between 4:30 and 10:00 p.m.,

_____

[2] Citations to "Cisneros Decl." refer to the Declaration of Jesus Emperatriz Cisneros in Support of His Application for a Default Judgment, dated Oct. 6, 2022, ECF No. 27-6.

[3] Plaintiff is referred to by counsel with both masculine and feminine pronouns in the Complaint, while feminine pronouns are used throughout the majority of the motion papers.  However, in plaintiff's declaration submitted in support of his Motion for Default Judgment, plaintiff refers to himself with the masculine Spanish noun "empleado," meaning a male employee.  (Cisneros Decl. ¶ 7).  It can thus be reasonably determined that plaintiff should be referred to with male pronouns.

working a total of 46 to 54 hours per week.  (Id. ¶ 41).  Then, between January 2020 and October 2020, for five (5) to seven (7) days per week, plaintiff worked from between 7:15 and 7:45 a.m. to between 4:30 and 8:00 p.m., working a total of 38 to 46 hours per week.  (Id. ¶ 42).  Plaintiff asserts that, from May 2018 to October 2020, defendants paid a "day rate" of $170 per day in both 2018 and 2019, and of $175 per day in 2020, with no account for his overtime hours during either time period.  (Id. ¶ 43).  As a result, plaintiff alleges, defendants never paid him overtime compensation for hours worked over 40 in a week.  (Id. ¶¶ 43, 48).  Additionally, plaintiff alleges that defendants did not maintain proper employment records or provide wage statements or wage notices.  (Id. ¶¶ 44-46).

Plaintiff asserts causes of action under (1) the FLSA for failure to pay plaintiff the statutory overtime compensation, and under (2) the NYLL for failure to pay plaintiff the statutory overtime compensation, (3) violation of the spread of hours requirements under the NYLL, (4) violation of the notice and recordkeeping requirements under the NYLL, and (5) violation of the wage statement requirements under the NYLL.  (Id. ¶¶ 47-64).

## PROCEDURAL BACKGROUND

Following the filing of the Complaint on November 24, 2021, the Summons and Complaint were served on Zoe Construction through the Secretary of State on December 23, 2021.  (ECF No. 12).  On December 29, 2021, defendants Atiencia and Lituama were served by affixing a copy of the Summons and Complaint on the door of the defendants' joint address, and by sending a copy by first class mail, on that same date.  (See ECF Nos. 10-11; see also Mulholland Decl. [4] ¶¶ 6-8).  On March 29, 2022, plaintiff's counsel filed a letter requesting time to search for any additional means of contacting defendants, who had yet to respond to their

---

[4] Citations to "Mulholland Decl." refer to the Declaration of Colin Mulholland in Support of Plaintiff's Motion for Default Judgment, dated October 11, 2022, ECF No. 27-1.

December service, to assure that any and all means of service had been utilized before entry of a default. (ECF No. 14). The Court granted this request, and on April 25, 2022, the amended summons was served on defendants Atiencia and Lituama at a newly-ascertained address shared by both defendants. (ECF Nos. 19-20). Plaintiff's counsel also submitted a letter affirming that he had served the corporation. (ECF No. 21). When defendants failed to file an Answer or otherwise respond within the required time period, plaintiff requested that Certificates of Default be entered against the defendants on June 14, 2022. (ECF No. 23). Thereafter, on June 17, 2022, the Clerk of Court entered Certificates of Default against defendants. (ECF No. 24).

On October 11, 2022, plaintiff filed a motion for default judgment (see ECF No. 27), accompanied by a memorandum of law in support of the motion, a declaration from plaintiff, a declaration from plaintiff's counsel, plaintiff's damages calculations, the attorney's billing records, a copy of the Complaint, copies of the Certificates of Default, a proposed form of judgment, and an affidavit of service. (See Cisneros Decl.; Mulholland Decl.; Dam. Calc.;[5] Billing Recs.[6]).

On October 12, 2022, the Honorable Diane Gujarati referred plaintiff's default judgment motion to the undersigned for a Report and Recommendation. On April 17, 2023, the undersigned issued an Order providing defendants with an opportunity to respond to plaintiff's motion and to request an inquest hearing. (ECF No. 28).[7] Defendants did not respond.

---

[5] Citations to "Dam. Calc." refer to plaintiff's damages calculation, filed October 11, 2022, ECF No. 27-7.

[6] Citations to "Billing Recs." refer to the Exhibit Lodestar, filed October 11, 2022, ECF No. 27-8.

[7] The Court also ordered plaintiff to serve a copy of the April 17, 2023 Order on defendants and to file proof of service on the docket. The information provided in plaintiff's affidavit of service revealed that the mail sent to defendant Zoe Construction Corp. was returned to sender. (ECF No. 29). The Court, out of an abundance of caution, ordered plaintiff to submit by June 22, 2023 an affidavit stating that the court's April 17, 2023 order was mailed to the last known address of Zoe Construction. On June 22, 2023, plaintiff's counsel filed a letter to that effect. (ECF No. 30).

DISCUSSION

I.      Default and Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(c).  In this case, the Clerk of the Court entered a default against defendants on June 17, 2022.  (See ECF No. 24).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it "must remain a weapon of last, rather than first, resort."  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp.

5

160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment.  These factors include: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendant on notice; and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages).  Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2685 (4th ed.).

A party defaults when it "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'"  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011) (citation omitted).  Indeed, a defendant may fail to defend by "failing to appear for a deposition,

dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial," Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65, or by failing to comply with discovery orders or failing to appear for trial.  Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013) (citing Hoxworth v. Blinder, Robinson Co., 980 F.2d 912, 917-19 (3d Cir. 1992)).  However, the "typical Rule 55 case is one in which a default has entered because a defendant failed to file a timely answer."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d at 129 (alterations and internal quotation marks omitted).

Here, defendants are clearly in default.  Defendants have not responded to the Complaint, nor has the corporate defendant appeared in this action by counsel.  See La Barbera v. Fed. Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) (holding "a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court *pro se*") (citing Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) and Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)).  Moreover, defendants have not only failed to file an Answer or otherwise move with respect to the Complaint, but defendants have also failed to respond to plaintiff's Motion for a Default Judgment or the Court's inquest hearing order.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316413, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion").  Thus, plaintiff's evidence on liability and relief is undisputed.

A.  Liability under the FLSA:  Overtime Wages

To establish liability under the FLSA, a plaintiff must prove the following:  (1) the defendant is an "[e]nterprise engaged in commerce or the production of goods for commerce"; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp.

2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)); see also Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000[.]

29 U.S.C. § 203(s)(1)(A).

With respect to the second prong, the FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ." 29 U.S.C. § 206(a).

The Court finds that the plaintiff has met the first two prongs. According to plaintiff, Zoe Construction is a domestic corporation that has a gross annual volume of sales of at least $500,000, subjecting it to the requirements of the FLSA. (Compl. ¶ 34). Specifically, plaintiff alleges that defendants, "both separately and jointly, had a gross annual volume of sales of not

less than $500,000." (Id.)  Additionally, plaintiff alleges that "[d]efendants and/or their enterprise were directly engaged in interstate commerce," given that they, and plaintiff, used construction tools and other goods produced outside the State of New York on a regular basis. (Id. ¶¶ 35, 38).  Thus, plaintiff has adequately alleged that defendants are an "enterprise engaged in commerce or in the production of goods for commerce."  Furthermore, since plaintiff alleges that he was employed by defendants, who qualify as "employers" within the meaning of the FLSA, and because the Court finds no basis for exempting the employment relationship at issue from the FLSA provisions, plaintiff qualifies as an "employee" under the FLSA.[8]

The only claim plaintiff makes under the FLSA is that defendants violated the overtime provisions of the FLSA by failing to pay plaintiff overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of 40 hours.  (Id. ¶ 48). Plaintiff alleges in the Complaint that, during the period of his employment, he regularly worked more than 40 hours per week and was paid a fixed daily rate without premium for overtime hours.  (Id. ¶¶ 4, 41-42, 43).  He claims that from May 2018 to December 2019, he worked from between 46 to 54 hours per week, and during that time period received a daily rate of $170 per day.  (Id. ¶¶ 41, 43).  From January 2020 to October 2020, plaintiff alleges that he worked from between 38 to 46 hours per week and received only a daily rate of $175 per day.  (Id. ¶¶ 42-43). Plaintiff therefore argues that his pay was insufficient to meet the overtime requirements of the FLSA.  (Id. ¶ 48).

Therefore, the Court finds that plaintiff has sufficiently set forth the necessary elements to state a claim against defendants under the FLSA for failure to pay overtime wages.

---

[8] See 29 U.S.C. § 213(a) (setting forth the exemptions).

B.  <u>Liability under the NYLL: Overtime Wages and Spread of Hours Wages</u>

Plaintiff also alleges that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates and provides for overtime pay at a rate of one and one-half times an employee's regularly hourly pay for time worked in excess of 40 hours in a week.  <u>See</u> N.Y. Lab. Law § 652; 12 N.Y. Comp. Codes R. Regs. Tit. 12, § 142-2.2; <u>see, e.g.</u>, <u>Noble v. 93 Univ. Place Corp.</u>, 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).

To recover under the NYLL, a plaintiff must prove that he or she is an "employee" entitled to the NYLL's protections and that the defendants are "employer[s]" as defined by the statute.  <u>See</u> <u>Lauria v. Heffernan</u>, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  <u>See</u> N.Y. Lab. Law § 190(3) (defining employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service"); N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation . . . ."  N.Y. Lab. Law § 651(5).  Therefore, plaintiff fits within the definition of "employee" and defendants satisfy the definition of "employer" under the NYLL.  Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.[9]

---

[9] See N.Y. Lab. Law § 651(5) (defining the exceptions).

In this case, plaintiff alleges that he was employed by defendants within the meaning of the NYLL.  (Compl. ¶ 31).  Plaintiff alleges that defendants willfully failed to pay overtime wages as required by the NYLL.  (Id. ¶¶ 52-53).

The statute of limitations for an employee to bring claims against an employer under the NYLL is six (6) years.  N.Y. Lab. Law § 198(3).  Since plaintiff began working for the defendants in May 2018 and his initial complaint was filed in November 2021, his claims fall within the statute of limitations set by the NYLL.  (Compl. ¶ 36).  Thus, the entirety of his employment period is covered by the NYLL, and the claims presented in this case are considered timely.

In addition, under the NYLL, an employer is required to provide an additional hour of pay at the minimum wage rate for each day that the employee works for more than ten hours ("spread of hours" wages).  See 12 N.Y. Comp. Codes R. Regs. Tit. 12 § 142-3.4.   Plaintiff alleges that he was not paid a spread of hours premium for each day worked greater than ten hours a day.  (Compl. ¶¶ 56-57).  In the context of a default, these uncontroverted allegations are accepted by the Court as true for purposes of evaluating the sufficiency of the Complaint.  Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state claims under the NYLL for violations of its overtime wage and spread of hours wage provisions.

C.  Liability under the NYLL: Wage Theft Prevention Act

An employer is also liable under the NYLL if it fails to provide proper wage notices and statements, pursuant to the Wage Theft Prevention Act, N.Y. Lab. Law §§ 195(1)(a) and 195(3).

Plaintiff alleges that defendants failed to provide him with a wage notice as required by NYLL § 195(1), and failed to provide him with wage statements containing the information required by NYLL § 195(3).  (Compl. ¶¶ 60, 63).

Section 195(1) requires that an employer provide a notice to the employee, at the time of hiring, that sets forth the rate of pay, allowances, and other specified information.  N.Y. Lab. Law § 195(1)(a).  Employers are also required to provide such a notice whenever any of the information required by the notice, such as the rate of pay, changes.  N.Y. Lab. Law § 195(2). Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. Law § 195(3).  Here, plaintiff alleges that he did not receive the required wage notice, nor was he provided with wage statements when he received his wage payments.  (Compl. ¶¶ 60, 63).

The statute provides that an employee can recover $250.00 for each workday that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00.  See N.Y. Lab. Law § 198(1-d).  Similarly, an employee can recover $50.00 for each workday that the employer was in violation of Section 195(1), up to a statutory maximum of $5,000.00.  See id. § 198(1-b).  Plaintiff argues that since plaintiff began working in May 2018 and worked for more than the minimum number of days required, he is entitled to receive an additional $5,000.00 for each of these statutory violations, or $10,000.00 in total, as a penalty for defendants' violation of these sections.  (Pl.'s Mem. at 9).

However, although plaintiff has alleged that defendants violated Section 195(1) and 195(3) of the NYLL, he has not alleged that he suffered any injury as a result of these violations.

12

Recently, the Supreme Court explained in <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190, 2205, (2021), that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  <u>Id.</u>

Courts in this Circuit, applying the lessons from <u>TransUnion LLC v. Ramirez</u> to the wage statement and wage notice provisions of the NYLL, have since required plaintiffs to identify the harm caused to them by these violations, and concluded that a statutory violation, alone, is insufficient.  <u>See, e.g.</u>, <u>Francisco v. NY Tex. Care, Inc.</u>, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar 28, 2022) (declining to certify a class action based on the defendants' alleged improper wage notice and statement policies because the plaintiff did not demonstrate, either in the pleadings or the record, a tangible injury or close parallel to a traditional cause of action sufficient to establish standing to bring those claims).  <u>Compare</u> <u>Stih v. Rockaway Farmers Market, Inc.</u>, No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding plaintiff had pled a sufficient injury flowing from defendants' alleged violations of the NYLL wage notice and statement provisions where plaintiff alleged that the noncompliance "caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment"), <u>with</u> <u>Ramirez v. Urion Constr. LLC</u>, No. 22 CV 3342, 2023 WL 3570347, at *8-9 (S.D.N.Y. Apr. 28, 2023) (declining to award statutory damages *and* dismissing NYLL wage notice and statement claims on motion for default judgment due to lack of standing for failing to allege a concrete, fairly traceable injury), <u>report and recommendation adopted</u>, 2023 WL 3570639 (S.D.N.Y. May 19, 2023), <u>Belliard v. Tarnovsky</u>, No. 20 CV 1055,

13

2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023) (declining to award a plaintiff's request for statutory damages under the NYLL despite defendant's default because plaintiff "merely state[d] that he was not provided the new hire notice or wage statements" and failed to "assert any other facts describing the injury in fact caused by not receiving these documents"), report and recommendation adopted, 2023 WL 3304723 (S.D.N.Y. May 8, 2023), and Neor v. Acacia Network, Inc., No. 22 CV 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing a complaint's claims for violations of the NYLL notice provisions for lack of standing where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

In the instant case, plaintiff merely alleged that he was not provided with the requisite notice and wage statements. He has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and therefore has not demonstrated his standing to bring these claims. In the absence of a showing that the plaintiff has standing to bring these claims, the Court may not award damages for these notice violations.

Accordingly, the Court respectfully recommends that plaintiff's Fourth and Fifth Causes of Action for violation of the NYLL wage notice and statement provisions be dismissed without prejudice for lack of standing. See Mayorga v. Merseyside Corp., No. 22 CV 64643, 2023 WL 3306686, at *2 (E.D.N.Y. May 7, 2023) (granting plaintiff's motion for default judgment except as to his claim for statutory damages under the NYLL for wage notice and statement violations, which were dismissed without prejudice for lack of standing); Ramirez v. Urion Constr. LLC, 2023 WL 3570639, at *1 (adopting report and recommendation recommending dismissal of plaintiffs' NYLL wage notice and statement claims and awarding plaintiffs damages as to their other claims).

D.  Liability of the Individual Defendants: Carlos Atiencia and Alexandra Lituama

Plaintiff brings claims against corporate defendant Zoe Construction, as well as individual defendants Atiencia and Lituama, who are alleged to own and/or operate Zoe Construction.  (Id. ¶¶ 13, 19, 27, 28).  Individuals may be held jointly and severally liable under the NYLL and the FLSA if they meet the statute's definition of an "employer."  Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) (noting that courts in the Second Circuit apply the same analysis for joint liability under the FLSA and NYLL).  To determine whether an individual is an "employer," courts apply a four-part test, known as the "Carter factors," examining whether the individual "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records."  Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984); see also Sarikaputar v. Veratip Corp., 371 F. Supp. 3d 101, 104 (S.D.N.Y. 2019); Lauria v. Heffernan, 607 F. Supp. 2d 403, 409 (E.D.N.Y. 2009).  "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question," and therefore none of the Carter factors is dispositive.  Mitchell v. Ceros, Inc., No. 21 CV 1570, 2022 WL 748247, at *3 (S.D.N.Y. Mar. 10, 2022) (internal quotation marks and citation omitted).

In his Complaint, plaintiff alleges that defendants Atiencia and Lituama had the power to hire and fire employees, including the plaintiff.  (Compl. ¶ 17, 23).  Additionally, plaintiff alleges that defendant Lituama supervised plaintiff on a daily basis and that defendant Atiencia was responsible for establishing plaintiff's schedule and supervised the employees and daily operations.  (Id. ¶¶ 15, 20, 22).  He further alleges that, at all times relevant to this action, defendant Lituama was responsible for determining the employees' wages and compensation,

including plaintiff's, and that defendant Atiencia controlled and/or supervised payroll practices. (Id. ¶¶ 14, 25). In his declaration, plaintiff also alleges that defendant Atiencia directly set plaintiff's pay rate and personally signed his checks. (Cisneros Decl. ¶¶ 10-12); see also Alvarado v. J.A Vasquez Landscaping Corp., No. 20 CV 4005, 2023 WL 2542702, at *6 (E.D.N.Y. Feb. 14, 2023) (citing to allegations in plaintiff's declaration that an individual defendant was plaintiff's employer). Additionally, he alleges that defendant Atienca maintained records about employees. (Cisneros Decl. ¶ 15). Even without allegations that defendant Lituama maintained employment records, the Court finds that a "review of the totality of the circumstances" reveals that plaintiff's allegations here are sufficient to establish that both of the individual defendants possessed the power to control plaintiff and were therefore his employers. See Irizarry v. Catsimatidis, 722 F.3d 99, 104, 116 (2d Cir. 2013) (finding that based on a totality of the circumstances, an individual defendant was plaintiffs' employer even though plaintiffs did not meet the second and fourth Carter factors) (internal quotation marks and citation omitted); Coley v. Vannguard Urb. Improvement Ass'n, Inc., No. 12 CV 5565, 2018 WL 1513628, at *4 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018) (noting that satisfaction of the four factors "is sufficient, but not necessary, to establish an employer-employee relationship") (citing Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 71 (2d Cir. 2003)).

Taken together and drawing all reasonable inferences in favor of plaintiff, the allegations demonstrate that defendants Atiencia and Lituama were employers within the meaning of the NYLL and the FLSA, and are jointly and severally liable with Zoe Construction for the judgment.

II.     Damages

Plaintiff seeks backpay, liquidated damages, prejudgment interest, statutory damages, attorney's fees and costs, and other claims for the FLSA and NYLL violations.[10]

A. Legal Standard

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury

---

[10] In the Declaration filed on October 6, 2022, in support of his application for a default judgment, plaintiff states that he is seeking compensation for unpaid minimum wages.  (Cisneros Decl. ¶ 34).  Furthermore, plaintiff notes in his Memorandum of Law that he is entitled to an award of pre-judgment interest and liquidated damages on *minimum wages* and overtime.  (Pl.'s Mem. at 7, 9).  However, there was no mention in the Complaint of any unpaid minimum wages, only unpaid overtime wages and unpaid spread of hours pay, and violations regarding the proper notification of wage statements.  (Compl. ¶¶ 48, 52, 57, 60, 63).  In a default judgment, plaintiffs may only be awarded unpaid minimum wages if such a violation is listed in their initial complaint.  See Perez Pino Grocery Corp., No. 17 CV 2965, 2018 U.S. Dist. LEXIS 64952, at *16-17 (E.D.N.Y. Apr. 16, 2018) (declining to award plaintiff damages for alleged unpaid minimum wages where plaintiff did not allege a claim for unpaid minimum wages in the original complaint).  Thus, to the extent that plaintiff is now seeking damages for unpaid minimum wages, the Court respectfully recommends denying such a request.

trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  Rather, "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum."  Id.  Here, because the plaintiff has provided a reasonably detailed affidavit from his counsel and a declaration from the plaintiff himself in support of his request for damages, the Court sees no reason not to proceed.

B.  Backpay – Overtime Wages and Spread of Hours Wages

Plaintiff seeks reimbursement for the overtime and spread of hours wages that he should have received pursuant to the FLSA and NYLL.  (Compl. ¶¶ 47-58).  With respect to his claim for overtime wages, although plaintiff has alleged that he was not paid the proper overtime rate under both the FLSA and the NYLL, plaintiff is "not entitled to recover twice for the same injury."  Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (internal quotation marks and citations omitted), report and recommendation adopted as modified, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014); see also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice").

Plaintiff "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)). Since plaintiff's recovery under the NYLL would be greater because the minimum wage rate in New York was higher than the federal minimum wage rate during the relevant period, the Court has calculated damages owed under the NYLL. Compare N.Y. Lab. Law § 652(a)(i) (setting minimum wage rates of $13.00 and $15.00 per hour during plaintiff's years of work) with 29 U.S.C. § 206(a) (setting minimum wage rate at $7.25 for the entire period).[11]

   1) Overtime Pay

With regard to his claim for overtime pay, plaintiff was entitled to receive time and a half for hours worked in excess of 40 each week. See 12 N.Y.C.R.R. § 142-2.2. Accordingly, for hours worked over 40 each week, plaintiff is owed the difference between the proper overtime rate and his regular rate or minimum wage rate, whichever is greater.[12] See Espinoza v. Indus. Glass & Mirror Inc., No. 16 CV 0064, 2016 WL 7650592, at *5 (E.D.N.Y. Nov. 30, 2016) (calculating overtime pay owed by subtracting the amount plaintiff was paid from the amount she was entitled to receive for overtime based on plaintiff's regular rate), report and recommendation adopted, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017). To calculate plaintiff's unpaid weekly overtime wages, the Court calculated the difference between what plaintiff was

---

[11] Under the NYLL, there is a distinction made between minimum wage rates applied to small employers (those employing 10 employees or fewer) and large employers (those employing 11 or more employees). See N.Y. Lab. Law § 652. Defendant Zoe Construction is alleged to have employed at least 15 employees other than plaintiff during the duration of plaintiff's employment with them, qualifying Zoe Construction as a large employer. (Cisneros Decl. ¶ 8, N.Y. Lab. Law § 652(a)(i)). Thus, the large employer rate was used in the damages calculations.

[12] New York law requires that employees be compensated at "one and one-half times the employee's regular rate [of pay] in the manner and methods provided in" the FLSA. 12 N.Y. C.C.R.R. § 142-2.2. The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. See 29 U.S.C. § 207; 29 C.F.R. § 778.107.

paid and the overtime wage rate he should have received during each period.  The Court then multiplied plaintiff's overtime wage rate by the number of hours exceeding 40 in a workweek and then the number of weeks in the pay period.  See, e.g., Cardoza v. Mango King Farmers Market Corp., No. 14 CV 3314, 2015 WL 5561033, at *9 (E.D.N.Y. Sept. 1, 2015), report and recommendation adopted, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

As a first step in calculating plaintiff's overtime wage rate, the Court must first determine his "regular rate."  See, e.g., Valdez v. H & S Restaurant Operations, Inc., No. 14 CV 4701SLTMDG, 2016 WL 3079028 at *4 (E.D.N.Y. Mar. 29, 2016), report and recommendation adopted, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  Under the non-hospitality provisions of the NYLL, plaintiff's regular rate is calculated by "dividing the total hours worked during the week into the employee's total earnings."  12 N.Y.C.R.R. § 142-2.16; see also 29 C.F.R. § 778.112 (stating that where an "employee is paid a flat sum for a day's work . . . , his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked").

Plaintiff alleges that, rather than receiving an hourly rate, he was paid a "day rate" of $170 per day between May 2018 and December 2019, and $175 per day between January and October 2020.  (Compl. ¶ 43).  Plaintiff alleges that his weekly work schedule varied and was not tracked by defendants.  Thus, the Complaint quantifies plaintiff's hours worked per week and days worked per week through a range.  In calculating plaintiff's regular rate of pay, plaintiff appears to have multiplied his "day rate" by the average number of days worked per week and then divided that product by the average number of hours worked per week.  (Compl. ¶¶ 41-42;

Mulholland Decl. ¶¶ 41, 45;[13] Dam. Calc.).  From these calculations, it has been determined that plaintiff's regular rate of pay was $20.40 per hour between May 2018 and December 2019 and $25.00 per hour between January 2020 and October 2020.  Both of these pay rates exceed the applicable minimum wage for each time period, and thus, these rates are used in calculating the difference between plaintiff's actual rate of pay and the amount which should have been paid for plaintiff's overtime hours.  Thus, because plaintiff was entitled to receive one and one-half times his regular rate of pay for every hour of overtime worked, the difference between plaintiff's proper overtime rate and the rate he actually received was $10.20 per hour from May 2018 through December 2019 and $12.50 per hour from January 2020 through October 2020.  The Court has confirmed these calculations.[14]

Plaintiff alleges that he worked an average of 50 hours per week between May 2018 and December 2019 and that he worked an average of 42 hours per week from January 2020 to October 2020,[15] which amounts to approximately 10 and 2 hours of overtime per week for each

---

[13] Counsel states in his declaration that due to defendants' failure to keep or provide plaintiff's time records, plaintiff presents a damages calculation based on his approximation of his average weekly hours.  (Mulholland Decl. ¶ 41).

[14] Specifically, plaintiff alleges that from May 2018 until December 2019, he typically worked between five (5) to seven (7) days per week for a range of 46-54 hours total.  (Compl. ¶ 41).  During that period, he was paid a day rate of $170 per day.  Accordingly, he worked an average of six (6) days per week at 50 hours a week.  His regular rate for May 2018 to December 2019 is calculated as follows:
$170 x 6 days per week = $1020 total earnings per week
$1020 / 50 hours per week = **$20.40**
From January 2020 until October 2020, he typically worked between five (5) to seven (7) days per week for a range of 38-46 hours total.  (Compl. ¶ 42).  During that period, he was paid a day rate of $175 per day.  Accordingly, he worked an average of six (6) days per week at 42 hours a week.  His regular rate for January 2020 to October 2020 is calculated as follows:
$175 x 6 days per week = $1050 total earnings per week
$1050 / 42 hours per week = **$25.00**

[15] The Court notes that plaintiff does not allege he worked a set schedule every day and every week.  Thus, it is not possible to independently confirm the range of hours plaintiff alleges he worked per week.  For example, he alleges that between May 2018 and December 2019, for five (5) to seven (7) days per week, he typically worked from between 7:15 and 7:45 a.m. to between 4:30 and 10:00 p.m., for which he worked a total of 46 to 54 hours of work per week.  (Compl. ¶ 41; Cisneros Decl. ¶ 28).  Assuming during a particular week in May 2018 plaintiff worked the shortest amount of time possible

period, respectively.  (Compl. ¶¶ 41-42; Cisneros Decl. ¶¶ 28-29).  Based on this information, the Court calculates that plaintiff is owed a total of $9,695.00 in unpaid overtime wages for the period of May 2018 through October 2020.[16]

    2)  Spread of Hours

Plaintiff alleges that defendants failed to pay plaintiff spread of hours pay, i.e., one additional hour's pay at the basic minimum wage rate or prevailing regular rate of pay for each day his hours exceeded ten hours, in violation of the NYLL.  (Compl. ¶ 56).  In his Motion for Default Judgment, plaintiff seeks damages for spread of hours pay (Pl.'s Mem. at 4; Mulholland Decl. ¶ 29), but does not specify the amount in damages he is requesting.  More confusing is that counsel states that plaintiff is entitled to spread of hours pay and cites to plaintiff's proposed

---

according to his alleged schedule, i.e., from 7:45 a.m. to 4:30 p.m., five days a week, plaintiff would have worked 43.75 hours, which is less than the low end of the range of hours that he alleged he worked. Similarly, if he worked the longest amount of time possible according to his alleged schedule, i.e., from 7:15 a.m to 10:00 p.m., seven days a week, plaintiff would have worked 103.25 hours.  However, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (collecting cases), report and recommendation adopted, (S.D.N.Y. Feb. 26, 2004); see also Santillan v. Henao, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (stating that by defaulting, defendants "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages").  Here, since defendants have chosen to default and have failed to present any evidence to dispute the number of hours allegedly worked, the presumption as to plaintiff's claim of the range of hours worked thus applies.  Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998), adopting report and recommendation, id. at 623–26.

    [16] Plaintiff did not specify in his Complaint the exact dates he started and ended his employment with defendants.  Instead, for purposes of calculating his damages, he uses the midpoint of May 2018 and October 2020 to indicate his start and end dates of employment, respectively.  Given the lack of accurate time records indicating plaintiff's exact start and end dates of employment, and defendants' failure to appear and contest the requested amount of damages, the Court finds the dates selected reasonable.  The Court's calculations are then as follows:

May 15, 2018 – Dec. 31, 2019:  $20.40 (regular rate) x 1.5 = $30.60 (overtime rate)
                           $30.60 - $20.40 = $10.20 per hour owed for overtime
                           $10.20 x 10 hours x 85 weeks = **$8,670.00**
Jan. 1, 2020 – Oct. 15, 2020:  $25.00 (regular rate) x 1.5 = $37.50 (overtime rate)
                           $37.50 - $25.00 = $12.50 per hour owed for overtime
                           $12.50 x 2 hours x 41 weeks = **$1,025.00**
Adding the total amount for each period results in **$9,695.00**.

damages calculation, which in turn do not have any requested amount listed in the "Unpaid Spread of Hours (SOH) Pay" column.  (Mulholland Decl. ¶¶ 25, 29; Dam. Calc.).  Thus, it is unclear to the Court whether plaintiff has abandoned his claim for unpaid spread of hours damages.

Even assuming plaintiff has not abandoned that claim, the Court is unable to calculate damages for spread of hours pay with only the information he has provided here.  Counsel states in his declaration that "[t]echnically speaking, there were days and weeks when Plaintiff worked more than 11 hours [a day]."  (Mulholland Decl. ¶ 41).  However, seemingly due to defendants' alleged failure to keep or provide plaintiff's time records (id.), the Court infers that plaintiff has not specified how many days per week, on average, plaintiff worked more than 10 hours and was therefore entitled to spread of hours pay.  Without this information, the Court cannot calculate the amount of damages owed to plaintiff.

Accordingly, the Court respectfully recommends against plaintiff being awarded spread of hours damages.

C. Liquidated Damages

In addition to compensatory damages, plaintiff seeks liquidated damages pursuant to the NYLL.  (Mulholland Decl. ¶ 57); N.Y. Lab. Law § 663(1).  Plaintiff claims he is entitled to liquidated damages under the NYLL for the entire period, amounting to a total of $9,695.00 in liquidated damages on the unpaid overtime.  (See Dam. Calc. at 1; Mulholland Decl. ¶ 58).

The NYLL provides for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  N.Y. Lab. Law §§ 198(1-a), 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  "However, an amendment to the NYLL, effective

November 24, 2009, 'incorporated the federal standard' and shifted the burden of proving good

faith to the employer." Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at

*3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp.

3d 306, 317 (S.D.N.Y. 2014)).  Under the NYLL, therefore, the employer bears the burden of

proving good faith and reasonableness.  The employer's burden of proving good faith "is a

difficult one, with double damages being the norm and single damages the exception." Gortat v.

Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs.

Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).  Defendants have defaulted and therefore have not met

their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to

plaintiff; thus, the Court finds that plaintiff is entitled to an award of liquidated damages under

the NYLL.  Accordingly, the Court recommends awarding plaintiff an additional $9,695.00 in

liquidated damages, which is equal to the Court's calculation of the amount due in unpaid

overtime wages.

   III.   Attorney's Fees

        Plaintiff also seeks an award of $3,262.50 in attorney's fees and $680.00 in costs incurred

in connection with this action, totaling $3,942.50, pursuant to the FLSA, 29 U.S.C. § 216(b), and

NYLL § 663(1).  (Pl.'s Mem. at 10; Mulholland Decl ¶ 65, Ex. F).

   A.   Prevailing Party

        The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee

to a prevailing party in an FLSA action.  Khalil v. Original Old Homestead Rest., Inc., 657 F.

Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an

FLSA action "*shall*," in addition to any judgment awarded to the plaintiff or plaintiffs, "allow a

reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis

supplied)); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013). Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. Law § 663(1). Section 663 provides that successful employees are entitled to:

> recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . . .

Id.

Plaintiff is a prevailing party under the FLSA and NYLL "'if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'" Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990) (holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs. See Abafita v. Aldukhan, No. 16 CV 6072, 2019 WL 6735148, at *10 (S.D.N.Y. Apr. 4, 2019) (holding that "[d]efendants have defaulted in this action, and so Plaintiff is the prevailing party," and that plaintiff is thus "entitled to recover attorneys' fees under" several statutes, including the FLSA and NYLL), report and recommendation adopted, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019).

B. Calculation of Reasonable Attorney's Fees

1) Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  Courts in this Circuit determine the "presumptively

reasonable fee," i.e., the lodestar amount, by multiplying the number of hours reasonably

expended on litigation by an hourly rate that a reasonable, paying client would be willing to pay.

See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182,

183, 189–90 (2d Cir. 2008); Jemine v. Dennis, 901 F. Supp. 2d 365, 391–92 (E.D.N.Y. 2012)

(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) (collecting cases), adopting report and

recommendation, id. at 372–94.  In order to reach this number, "courts look to the 'rates

prevailing in the community for similar services of lawyers of reasonably comparable skill,

experience, and reputation.'"  Jemine v. Dennis, 901 F. Supp. 2d at 392 (quoting Cruz v. Local

Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994)).

Although courts retain broad discretion in awarding fees, Peralta v. M & O Iron Works,

Inc., No. 12 CV 3179, 2014 WL 988835, at *13 (E.D.N.Y. Mar. 12, 2014), adopting report and

recommendation, id. at *1–15, "[t]he Second Circuit has explained that the 'community' to

which the district court should look is the district in which the district court sits."  Estrella v. P.R.

Painting Corp., 596 F. Supp. 2d 723, 725 (E.D.N.Y. 2009) (citing Arbor Hill Citizens

Neighborhood Ass'n v. County of Albany, 522 F.3d at 190).  Plaintiffs bear the burden of

proving the reasonableness of requested fees, "preferably through contemporaneous time records

that describe with specificity the nature of the work done, the hours expended, and the dates."

Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 75, 94 (E.D.N.Y. 2012) (citing New York State

Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir. 1983)).

Additionally, among the "'critical ingredients in determining a reasonable hourly rate'" are the

"'nature of representation and type of work involved in a case.'"  Jemine v. Dennis, 901 F. Supp.

2d at 392 (internal quotation marks omitted) (quoting Arbor Hill Citizens Neighborhood Ass'n v.

26

County of Albany, 522 F.3d at 184 n.2). Courts in this Circuit are guided by: "(1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties." Santillan v. Henao, 822 F. Supp. 2d at 300 (citing Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005)).

    2)  Analysis

In support of his request for attorney's fees and costs, plaintiff submitted billing records from his attorney, Colin Mulholland, Esq. (Billing Recs.), which set forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with a description of services performed.  (See Billing Recs.).  Plaintiff seeks attorney's fees in the amount of $3,262.50, representing 8.7 hours of work at a rate of $375.00 per hour for services performed by Mr. Mulholland, a practicing attorney of 10 years who focuses on FLSA and employment claims in New York City and who has owned his own practice since 2019. (Mulholland Decl. ¶ 63).  According to Mr. Mulholland's Declaration, he has litigated "dozens upon dozens of" FLSA and employment claims in his 10 years of experience and has been lead counsel in over 40 cases in the Eastern District, almost all of them being FLSA cases that resulted in favorable settlements.  (Id.)  He has also successfully conducted four trials as sole counsel in FLSA cases in the Southern District of New York.  (Id.)

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rate of $375 per hour for a sole practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District.  See, e.g., Hernandez v. Quality Blacktop Servs., Inc., No. 18 CV 4862, 2021 WL 1413246, at *11 (E.D.N.Y. Mar. 10, 2021) (stating that a rate of $350 per hour for a sole practitioner with "is

commensurate with the rates routinely awarded in this district to attorneys with comparable backgrounds and experience"); Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (noting that "[c]ourts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners" in FLSA cases), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020).  Indeed, this Court has previously awarded Mr. Mulholland an hourly rate of $375 for a similar wage and hour action.  See Cruz v. O & M Pizza Corp., No. 20 CV 5057, 2022 WL 3448661, at *12 (E.D.N.Y. July 22, 2022), report and recommendation adopted, 2022 WL 3446332 (E.D.N.Y. Aug. 17, 2022).

Turning to the number of hours billed, Mr. Mulholland seeks compensation for 8.7 hours of work.  (See Billing Recs.).  In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440).  Courts in this circuit have approved fees where the attorneys billed a far higher number of hours in FLSA and NYLL default cases.  See Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18, 2015) (approving fees of $22,075 for 108.2 hours billed in an FLSA and NYLL default case with multiple plaintiffs).

Having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, the Court finds that the number of hours charged in this matter is reasonable, given the amount of work performed.  Thus, plaintiff is owed a total sum of $3,262.50, representing 8.7 hours of work at $375.00 per hour by Mr. Mulholland.  Accordingly, based on the hourly rate set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiff be awarded $3,262.50 in attorney's fees.

C.  Reasonable Costs

Plaintiff also requests $680.00 total in costs, consisting of $400.00 for the filing fee and service of process fees of $280.00.[17]  (Mulholland Dec. ¶ 61).

Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiff be awarded $680.00 in costs.  See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, postage, and photocopying).  In sum, the Court recommends that plaintiff be awarded $3,262.50 in attorney's fees, plus an additional $680.00 in costs, totaling $3,942.50.

D.  Pre-Judgment Interest

Additionally, plaintiff seeks an award of pre-judgment interest on all damages awarded under the NYLL, calculated at the rate of 9% per annum.  (Mulholland Decl. ¶¶ 64, 69).  Under New York law, plaintiff is entitled to interest on all wages awarded, calculated at a rate of 9% per annum.  See N.Y. C.P.L.R. § 5004.  Pre-judgment interest is not available under the FLSA. See Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008).  Notwithstanding, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Where plaintiffs receive damages under both the FLSA and the NYLL, pre-judgment interest accrues only on any amounts for which liquidated damages are not awarded under the FLSA. See Santillan v. Henao, 822 F. Supp. 2d at 298.  Here, since the Court awarded damages only on

---

[17] While plaintiff requests $280.00 in costs for service of process fees, plaintiff has also submitted invoices for service of process indicating a total of $375.00.  (Billing Recs.; Mulholland Decl. ¶ 61). However, given that plaintiff has requested only $280.00 in costs, the Court will not award more than what was requested.

plaintiff's NYLL claims, there is no impediment to awarding both liquidated damages and pre-judgment interest on plaintiff's NYLL claims.

Accordingly, plaintiff is entitled to pre-judgment interest on his unpaid overtime wages. Where, as here, violations of the NYLL occur over an extended period of time, courts have discretion to calculate pre-judgment interest "upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); see de los Santos v. Marte Constr., Inc., No. 18 CV 10748, 2020 WL 8549054, at *7 (S.D.N.Y. Nov. 25, 2020) (stating that "'interest is calculated using the simple . . . [rather than] a compounded rate.'"), report and recommendation adopted, 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020).

Without specifying a date from which they seek pre-judgment interest on their damages under the NYLL, plaintiff asserts that he is entitled to $3,028.76 in pre-judgment interest on minimum wages and overtime as of October 11, 2022, which is the date plaintiff filed his Motion for Default Judgment.  (Pl.'s Mem. at 7; Mulholland Decl. ¶ 46).  Given the lack of specificity with regard to plaintiff's employment period with the defendants, and without the benefit of any further explanation from plaintiff regarding how he calculated the $3,028.76 pre-judgment amount, the Court is unable to confirm plaintiff's calculations.  Consequently, the Court opts instead to select a midpoint in plaintiff's period of employment.  See Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) (utilizing mid-point method and calculating interest due on plaintiffs' total unpaid wage damages); Cabrera v. Canela, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (explaining that "[t]he midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest"), report and recommendation adopted, id. at 172–74.

Using the Court-adjusted dates of employment, plaintiff's employment with defendants spanned from May 15, 2018 to October 15, 2020.  The midpoint of his employment was July 31, 2019.[18]  His *per diem* interest rate is $2.39.[19]  If he is entitled to pre-judgment interest beginning on July 31, 2019 until the date of this Report and Recommendation, he would be owed $3,515.69 in pre-judgment interest.[20]

The Court also respectfully recommends that the plaintiff recover any additional interest from the date of this Report and Recommendation until the date of judgment at his *per diem* rate.

E. Post-Judgment Interest

Interest under 28 U.S.C. § 1961(a) is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  28 U.S.C. § 1961(a).  Although plaintiff has not made a request for post-judgment interest, "'[t]he award of post-judgment interest is mandatory under 28 U.S.C. § 1961'" on money judgments in federal civil cases.  Nature's Plus Nordic A/S v. Natural Organics, Inc., 108 F. Supp. 3d 52, 58 (E.D.N.Y. June 5, 2015) (quoting Indu Craft, Inc. v. Bank of Baroda, 87 F.3d 614, 619 (2d Cir. 1996)), aff'd, 646 Fed. Appx. 25 (2d Cir. 2016); see also Tru-Art Sign Co., Inc. v. Loc. 137 Sheet Metal Workers Intl. Assn., 852 F.3d 217, 223 (2d Cir. 2017) (remanding case to district court to calculate and award post-judgment interest pursuant to 28 U.S.C. § 1961 where district court did not address claim for post-judgment interest).

---

[18] There are 884 days between May 15, 2018 and October 15, 2020.  July 31, 2019 is 442 days after May 15, 2018.

[19] (9,695.00 (principal amount) * .09 (statutory interest rate)) / 365 = $2.39.  See Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d at 662 (utilizing same calculating method).

[20] There are 1,471 days from July 31, 2019 until August 10, 2023.  1,471 * $2.39 = $3,515.69.

Accordingly, it is respectfully recommended that plaintiff be awarded post-judgment interest at the statutory rate, as calculated by the Clerk of Court.

<u>CONCLUSION</u>

In summary, the Court respectfully recommends that a default judgment enter against defendants, with the exception of plaintiff's NYLL wage notice and statement claims in Counts Four and Five. The Court further respectfully recommends awarding plaintiff **$22,905.69** in damages, which includes $9,695.00 in compensatory damages for unpaid overtime pay, $9,695.00 in liquidated damages, and $3,515.69 in pre-judgment interest from his midpoint date of July 31, 2019 until the date of judgment. It is recommended that plaintiff also be awarded post-judgment interest. Additionally, the Court recommends that plaintiff be awarded attorney's fees and costs in the amount of **$3,942.50**. It is also respectfully recommended that plaintiff not be awarded an amount for unpaid spread of hours pay. Finally, the Court respectfully recommends that plaintiff's NYLL wage notice and statement claims be dismissed without prejudice for lack of standing.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff is directed to serve a copy of this Report and Recommendation promptly by certified mail on defendants and to provide the Court with proof of service.

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: August 10, 2023
      Brooklyn, New York

                                  /s/ Cheryl L. Pollak
                                  CHERYL L. POLLAK
                                  United States Magistrate Judge
                                  Eastern District of New York